Smith *v.* Allen.

Lansing.
1   101
64h   88

---

JOHN W. SMITH and SOLOMON E. SMITH, Respondents, *v.* CAROLINE C. ALLEN, Appellant.

(GENERAL TERM, SEVENTH DISTRICT, JUNE, 1869.)

The promissory note of a married woman, given for goods which had been purchased by her upon credit, for family use, while her husband is residing and cohabiting with her, and supporting his family, is absolutely void, and has no foundation, either in law, equity, conscience, or good morals, unless there is some special agreement by which the goods are sold to the wife, for her exclusive use, upon the credit of her separate property, and not upon the credit of her husband.

A subsequent promise to pay such note, made by the wife, after the husband's death, is equally void.

And that the vendors, of their own motion, charged the goods on their books to the wife personally, cannot affect her rights.

The case of *Goulding* v. *Davidson* (26 N. Y., 604), cited, and distinguished.

COMPLAINT, on a promissory note made by the defendant, during coverture, for the price of merchandise purchased by her, with an allegation that the defendant had, after her husband's death, " in consideration of the moral obligation resting upon her," promised to pay said debt and note.    The answer admits a separate estate, alleges coverture, and negatives the usual circumstances under which a married woman's promise to pay can be enforced; and alleges that she gave the note at the request of the plaintiff, J. W. Smith, on his promise that he would never trouble her.

. One of the plaintiffs testified that he sold goods, ribbons, towels, muslins, silks, etc., to the defendant, in 1858 and 1859; that plaintiffs charged these goods to her; that, on March 7th, 1861, she settled the account, rejecting some items, for which, she said, her husband was to pay, and giving the note in suit for the balance, and also for an old note of $78.61, dated March, 1858; that, after her husband's death (May, 1862), the defendant promised to pay the note in suit; that witness considered the defendant's husband responsible, at the time the goods were bought; that defendant and her husband resided and cohabited together at that time; that witness knew both of them, and knew them as husband and wife, up to the time of the husband's death, and did not know at the time the goods were purchased, for whom they were.    And on his cross-examination he testified as follows: " When Mrs. Allen bought these articles, do you remember any conversation that took place between you and her ?   No, sir, I don't.    At the time these goods were purchased, was there any agreement between you and Mrs. Allen ?    I do not recollect any."    Plaintiffs read the note in evidence, and rested, and a motion for a nonsuit was denied.

. The defendant then, on her own behalf, in addition to testifying that the bill for goods was originally made out in her husband's name; that she had given the note, at the solicitation of Smith, to accommodate him, and on condition that she should never be called on to pay it; and that she had not, since her husband's death, promised to pay it; also testified:

" This account was for articles used in the family.  I never told Mr. Smith or any one else in the store, that I desired these articles charged to me, or that I would become responsible for them, or any of them.  I never spoke to them upon the subject."

Some further testimony was given on plaintiffs' behalf, tending to show an implied admission by defendant, that she had promised, since her husband's death, to pay the note. But there was no further evidence showing, or tending to show, that she had originally said, or done anything, expressive of an intent to purchase the goods for herself, or on the credit of her separate estate.

Defendant renewed the motion for a nonsuit, on the grounds, that, there was no proof that the goods were purchased for the benefit of her separate estate, or that they were purchased by her, on the credit of her separate estate; and that there was nothing for the jury to pass upon, the defendant's testimony being substantially uncontradicted.

The court denied the motion, and left it to the jury to say, 1. Whether the defendant had, since her husband's death, promised to pay the debt; 2. Whether "the credit for the account was given solely to the wife," with instructions that "if the account was contracted by her, upon her own credit, and credit was given to her on that," and if "the note was given by her for the purpose of creating an obligation against her to pay the account, then there was sufficient to support the alleged promise" to pay the note.  The jury found in favor of plaintiffs for the amount of the note with interest, and the defendant appealed.

*Burton & Ten Eyck,* for the appellant.

*S. Baldwin,* for the respondents.

Present—E. D. SMITH, DWIGHT and JOHNSON, JJ.

By the Court—JOHNSON, J.   After a careful examination of the testimony in this case, and of the pleadings, I am

clearly of the opinion, that the judge at the trial, should, after the close of the testimony, have nonsuited the plaintiffs, or ordered a verdict in the defendant's favor, as requested by her counsel. The note in question was made up of two items, one, and by far the largest portion, was a promissory note, held by the plaintiffs, on which there was due $78.61; and the balance was the amount of an account composed of various items of merchandise, which appears upon its face to be an account in favor of the plaintiffs against the defendant. Whose promissory note was this which entered into and formed so large a part of the note in question? The defendant alleged that it was a note made by her husband. The plaintiff, John W. Smith, who was the only witness in behalf of the plaintiffs, in regard to the transactions out of which the note sprung, and the consideration thereof, on his cross-examination, by defendant's counsel, was asked, whether this note on which the $78.61 was due, and which entered into the note in question, was not the note of the defendant's husband, given by him for goods he had purchased. His answer was: " I do not recollect how that is; my impression is, it was her note, but I am not positive of that." The defendant, on the contrary, testified positively and unequivocally, that that note was one which had been given by her husband to the plaintiffs, and was his debt; and that at the time she gave the note in question, it was delivered to her by the plaintiffs, and that she then had it in her possession at her house. So far as this item is concerned, which forms nearly two-thirds of the entire note in question, there is certainly no conflict of evidence. The plaintiff has forgotten how the fact was, and the defendant has not, but testifies positively how it was. Upon the evidence, therefore, so much of the note in question, was indisputably for the debt of the defendant's husband. In regard to the account which formed the smaller portion of the note, the testimony, on the part of the plaintiff, fails entirely to prove that the goods therein named, were purchased by the defendant for herself, or on her own account, or that there was ever any agreement

Smith *v.* Allen.

between the plaintiffs and the defendant, that they should be charged to her. The plaintiff, John W. Smith, expressly testifies that, at the time the goods were purchased, he did not know for whom they were purchased. He also testifies, that, at the time the goods were purchased, he does not recollect any conversation between the plaintiffs and the defendant on the subject, nor any agreement between them. The defendant, upon these questions, testifies positively, that the goods in the account, were purchased for the use of the family, and upon her husband's credit; that she had no portion of them herself, unless perhaps one small item, and that she never bargained for them on her own account or credit, and never authorized the plaintiffs to charge them to her, or consented that they should so charge them. And in reference to this same account, the defendant also testifies, that it had once been made out against her husband, and left at their house by the plaintiffs, and that in the account so rendered, the items were all charged to him. The plaintiff, who testifies, at first denies that the account was so made out and presented, but finally admits that he cannot say it was not so done. But however the fact may be in this particular, it is entirely clear and uncontradicted that the goods were never sold upon her credit, or to her, and there was never any bargain to that effect between the parties. There was no agreement, according to the plaintiffs' own showing, between the parties, that the defendant should purchase the goods on her own account, and pay for them herself, and that they should be charged to her. There was, therefore, nothing to submit to the jury, on the question of a separate purchase by the defendant on her own account and credit. The evidence on that question was all one way. If the plaintiffs charged them in fact to the defendant, they did it, so far as appears from the evidence, of their own motion, which could not affect the defendant's rights. Goods purchased by the wife upon credit for family use, are the goods of the husband, and the husband, and not the wife, is liable to pay for them, unless there is some special agreement between the parties, by which

they are sold to the wife for her exclusive use, and upon the credit of her separate property, and not upon the credit of the husband. In the latter case it may be that the title would vest in the wife, and she alone would be entitled to use and control the property; but that is not the case here, upon the undisputed evidence. The note, therefore, having been given for the debt of the husband, in his lifetime, and while he was providing for his family, was utterly without consideration, and void. It was a promise to pay demands against another, which she was under no legal, equitable or moral obligation to pay. Neither conscience nor good morals required her to assume these debts, and provide for their payment. Independent, wholly, of the disability of coverture, she was not, and could not have been made liable to the plaintiffs, previous to the giving of the note in question. Unless, therefore, she became legally liable, upon the sole ground of her promise, after the decease of her husband, to pay that note, this action cannot be maintained. The jury have found, upon the evidence, that such a promise was made by the defendant. This finding is against the weight of evidence, as will be seen by looking at the plaintiffs' testimony, and comparing it with that of the defendant. The plaintiff does testify, in general terms, that at some time after the death of her husband, the defendant promised to pay the note; but he is unable to recollect or to state any time or place, or to give any conversation between them on the subject. His testimony is vague and indefinite. On the other hand, the defendant testifies, positively and certainly, that she never made any such promise after her husband's decease; that she had been advised in regard to her rights upon the subject, and at all times refused to have any conversation with the plaintiffs, or either of them, upon the subject of paying the note. But the question, if it was material, was properly submitted to the jury, and the verdict is not, perhaps, so entirely, or so decidedly without evidence to support it as to justify the court in interfering with the judgment on that ground. It must be taken as a fact, therefore, that the

defendant did promise to pay the note after her husband's death.  But I am of the opinion that this promise, under the facts of this case, was not binding upon the defendant, and had no validity in law.  The books will, I think, be searched in vain for any case where a promise to pay a demand existing against a husband only, made by his widow after his death, has been held a binding promise.  The case of *Goulding* v. *Davidson* (26 N. Y. R., 604), is relied upon by the plaintiffs' counsel to sustain this promise.  But that case, affords to the plaintiffs' claim, in this action, no support whatever.  In that case the defendant, who was a married woman, was carrying on business in her own name, and on her own account purchased goods in the line of her business without disclosing the fact of her coverture, the seller being ignorant of such fact.  She gave at the time, her promisory note for the amount of the purchase, and used the goods so purchased in her business, and had the exclusive use and benefit of the same.  This, it was held, was a sufficient consideration to support her promise to pay the note made, after the death of the husband.  The case turned entirely upon the ground that she had made the purchase, in her own name, holding herself out as a *femme sole*, and had used the goods in her separate business, and had the sole and exclusive benefit of the purchase so made.  Two of the judges express the opinion, that the title to the goods, under the circumstances of the case, vested in the defendant at the time of the purchase, and not in the husband; and that the latter never became liable to pay for them.  There was nothing in that case, but the mere fact of coverture, which prevented the legal liability attaching to her for the consideration of her notes the moment her purchases were completed.  Not so here.  The defendant was never liable for the consideration, upon which this note is founded.  All there is, consists in her promise to pay the debt of her husband, in the form of a promissory note, made while he was living and cohabiting with her, and supporting his family, and her promise to pay such note after his death.  The note, when it was given,

was absolutely void, having no foundation either in law, equity, conscience, or good morals; and the subsequent promise to pay such note, was equally void. (*Littlefield* v. *Shee*, 2 Barn. & Ad., 811; 22 E. C. L., 187; *Meyer* v. *Haworth*, 8 A. & E., 467; *Watkins* v. *Halstead*, 2 Sand. S. C., 311.) None of these cases are overruled or questioned in *Goulding* v. *Davidson*, *supra*, but are conceded to be good law. The promise to pay the note by the defendant after the death of her husband was wholly immaterial as a fact in the case, in view of the other facts which were undisputed.

The learned justice should, therefore, at the close of the evidence, have nonsuited the plaintiff, or directed the jury to find a verdict in favor of the defendant. The judgment must therefore be reversed, and a new trial ordered with costs to abide event.

Judgment reversed and new trial ordered.