MARY WILSON v. JOHN B. HERBERT AND FRANCIS O. HERBERT, PARTNERS, &c.

1. That part of the third section of " An act relative to statutes," (*Rev.*, p. 1120,) which provides that when the course of practice or procedure for the enforcement of a right vested or accrued under a statute subse-

quently repealed, shall be changed, actions then pending or thereafter commenced for the enforcement of such right shall be conducted as nearly as may be in accordance with such altered practice or proce- dure, applies only to cases where the legislature has substituted a new course of practice or procedure for the enforcement of such ante- cedent liability. Where no new remedy has been substituted for the enforcement of a right accrued under a statute afterwards repealed, the old remedy remains, notwithstanding the repeal of the statute by force of constitutional provision.

2. The fifth section of "An act to amend the laws relating to the prop- erty of married women," (*Rev.*, *p.* 637,) has not provided a new course of practice or procedure for the enforcement of contracts made by married women before that act took effect, and the remedy and course of practice and procedure for the enforcement of a contract made by a married woman, while the act of 1862 (*Nix. Dig.* 548) was in force, remain as they were under that act, notwithstanding its repeal.

3. Where husband and wife are living together, and the wife purchases articles for domestic use, the law imputes to her the character of an agent for her husband. She may contract for such articles as princi- pal, and assume the responsibility of principal debtor. But to fix upon her such a liability, it must appear affirmatively that she made the purchase on her individual credit. There must be either an express contract on her part to pay out of her separate estate or the circumstances must be such as to show clearly that she assumed indi- vidual responsibility for payment, exclusive of the liability of the husband.

On *certiorari* to Burlington Pleas.

Argued at June Term, 1879, before Justices DEPUE, VAN SYCKEL and DIXON.

For the plaintiff in *certiorari*, *C. E. Hendrickson*.

*Contra*, *J. H. Gaskill*.

The opinion of the court was delivered by

DEPUE, J.   This action was brought against the plaintiff in *certiorari*, who is a married woman living with her hus- band. The husband was not joined as a defendant in the suit. The claim of the plaintiff below was upon an open account for goods sold and delivered, commencing May, 1874,

and covering a period extending down to July 21st, 1875. Payments had been made on account from time to time, leaving a balance due of $45.99, for which judgment was rendered, with costs. Of the balance due, the sum of $6.78 was for goods sold and delivered after January 1st, 1875.

Prior to January 1st, 1875, the liability of a married woman for debts of her own contracting was provided for by the act of March 24th, 1862. *Nix. Dig.* 548. The common law disability of a married woman to enter into contracts enforceable against her by actions at law was not entirely removed by the act of 1862. The common law disability of coverture was superseded only so far as to enable a married woman to enter into contracts where she was beneficially interested, the consideration moving to her. *Eckert v. Reuter,* 4 *Vroom* 266; *Vankirk v. Skillman,* 5 *Id.* 109. The remedy to enforce this statutory liability was by an action against her and her husband, in which the plaintiff was required to aver, in his pleading, the particular facts which, by the statute, removed the disability of the wife to contract, in order to make out a legal cause of action. *Lewis v. Perkins,* 7 *Vroom* 133. The plaintiff's action in this case is against the wife alone, and his statement of demand contains only a copy of the account, without any averment of the facts necessary to the liability of the wife under the act of 1862. If the suit had been brought while the act of 1862 was in force, the proceedings would have been radically defective for this reason.

The act of 1862 was repealed by the revision which went into operation on January 1st, 1875. In the revision a different system was adopted. By the fifth section of "An act to amend the laws relating to the property of married women," it was provided that "any married woman shall, after the passing of this act, have a right to bind herself by contract, in the same manner and to the same extent as though she were unmarried, and which contracts shall be legal and obligatory, and may be enforced at law or in equity by or against such married woman, in her own name, apart from

her husband; provided that nothing herein shall enable such married woman to become an accommodation endorser, guarantor or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability, of any other person." *Rev.*, *p.* 637. This legislation effected a radical change in the law. It enlarged the powers of married women, and gave a married woman the capacity to enter into any contract which would have been legal if she were unmarried, with the exception of those enumerated in the proviso, and changed entirely the procedure by which such contracts should be enforced by action, viz., by a suit against her in her own name, in which the common forms of pleading would be sufficient.

It is contended by the plaintiff below, that after the Revision took effect a party might adopt the procedure therein prescribed in suing upon such contracts as were made while the act of 1862 was in force. To support this contention he relies on the third section of "An act relative to statutes." *Rev.*, *p.* 1120. That section enacts that "the repeal of any statutory provision by this act, or by any act of the legislature hereafter passed, shall not affect or impair any act done, or right vested or accrued, or any proceeding, suit or prosecution had or commenced in any civil cause before such repeal shall take effect; but every such act done, or right vested or accrued, or prosecution had or commenced, shall remain in full force and effect, to all intents and purposes, as if such statutory provision so repealed had remained in full force, except that where the course of practice or procedure for the enforcement of such right, or the prosecution of such suit, shall be changed, actions then pending, or thereafter commenced, shall be conducted as near as may be in accordance with such altered practice or procedure." The discussion on this part of the case relates to the construction of this section in its application to the fifth section of the present married woman's act.

No doubt is entertained of the power of the legislature to make laws incidentally affecting the pursuit of remedies for

enforcing existing contracts, such as regulating the admission of evidence, the course of practice, and similar acts, altering in matters of form the means of realizing the benefits of a contract, leaving the substance of the remedy unaffected. *Rader* v. *S. E. Road District*, 7 *Vroom* 273. The form in which the action shall be brought, and the mere joinder of parties therein, are within the operation of this principle. The section quoted from the act relative to statutes has reference to such a condition of affairs. It saves rights vested and accrued under an existing statute from the effect of its repeal, and provides for the adoption of any new course of practice or procedure which shall have been subsequently established for the enforcement of *such* right. If the legislature had passed an act authorizing the prosecution of all suits to enforce the liabilities of married women by actions against them in their own names, without joining their husbands, such an act would have been valid, and suits subsequently brought on antecedent liabilities would have been controlled by such altered procedure. The eleventh section of the married woman's act is an instance of such legislation with regard to the capacity of a married woman to maintain, in certain cases, actions in her own name. *Rev., p.* 638. But the fifth section, which is the only portion of the act which relates to actions against married women, contains no general language similar to that of the eleventh section. It merely confers on married women power to make certain contracts, *after the passing of the act,* which contracts it declares to be legal and obligatory, and enforceable at law or in equity, by or against such married woman, in her own name, apart from her husband. The contracts to which this section refers, and to which the new procedure is applied, are expressly designated. They are such as are made after the passing of the act. By no liberality of construction short of judicial legislation, in defiance of plain and unambiguous language, can the meaning of this section be extended further. It cannot be expanded to embrace contracts made before the act was passed, without violating that cardinal rule of construction, that acts of the legislature are

to be construed, if possible, from the language in which the legislative intent is expressed. The right of the plaintiff in that portion of his account which was prior to January 1st, 1875, accrued under the act of 1862. The legislature has not changed the course of practice or procedure for the enforcement of such right. The plaintiffs' contract having been made while the act of 1862 was in force, was not impaired by the repeal of the act, and no new remedy having been substituted for its enforcement, the old remedy necessarily remained after its repeal, by force of constitutional provision. *Const., art. IV.*, § 7, ¶ 3.

The other question discussed on the argument touches the merits of the case, and applies as well to the items of the account prior to January 1st, 1875, as to the single item after that date. The court below, contrary to repeated decisions of this court, instead of returning with this writ its findings on matters of fact, has returned the evidence, and we are left to grope through the testimony to find the legal principles on which the judgment was founded.

The plaintiffs were engaged in the business of butchers, at Mount Holly. The defendant was the wife of one Jacob M. Wilson. The husband and wife lived together on a farm near Mount Holly, which the husband had rented in his own name. It was in evidence that the husband did all the business connected with the farm: kept boarders, and contracted with them and collected the money due for board. The wife lived with her husband, managing the domestic affairs of the family, and had no separate estate or business of her own.

The account sued on was for meat delivered at the husband's residence, and used for domestic purposes. It was selected and ordered by the wife, and was charged to her in the plaintiffs' books.

The statutes which have endowed married women with the power to have separate property, and to hold it as if they were unmarried, have not dissolved the marriage, or abolished the peculiar incidents of the marital relation. The duty of providing maintenance and support for the family still devolves

on the husband, and the wife may discharge her duties in the management of his domestic affairs without incurring personal responsibility. The purpose and comfort of married life would be defeated if the wife had not authority to hire servants and purchase articles necessary for domestic use, and for this purpose the law regards her as the agent of the husband. 1 *Pars. on Cont.* 347. And it is of the greatest importance to society that the wife should be allowed to perform her duties in the management of the husband's domestic affairs as his agent, without liability on her part, on contracts made by her in the line of her duties, unless she voluntarily assumes a personal responsibility.

In New York, under a statute which provided that the separate property of a married woman should not be subject to the interference or control of her husband, or liable for his debts, except such debts as were contracted for the support of herself or her children, by her *as his agent*, it was held, upon reasoning founded on considerations of public policy and the general intent expressed in other acts of the legislature on the same subject, that the legislature could not have intended by that statute to make the separate estate of the wife liable for a debt contracted by the husband through her agency, and that necessaries purchased by a married woman were not chargeable on her separate estate, unless, perhaps, purchased expressly on the credit of it, and charged upon it by some affirmative act on her part. *De Mott* v. *McMullen*, 8 *Abb. Prac. R.* (*N. S.*) 335. In another case it was decided that a promissory note subsequently given by a married woman for goods which were purchased by her upon credit, for family use, while her husband was residing and cohabiting with her and supporting his family, was absolutely void, and had no foundation either in law, equity, conscience or good morals, unless there was some special agreement by which the goods were sold to the wife for her exclusive use, upon the credit of her separate property, and not upon the credit of her husband. *Smith* v. *Allen*, 1 *Lans.* 101.

The principle which should govern in controversies of this

kind, under the legislation of this state on this subject, is quite apparent. The statute allows a married woman to contract as a *feme sole*, except that she cannot become surety or make any valid promise to pay the debt, or answer for the default or liability of any other person. When husband and wife are living together, and the wife purchases articles for domestic use, the law imputes to her the character of an agent for her husband, and regards him as the principal debtor. She may contract for such articles as principal, and assume the responsibility of a principal debtor. But to fix upon her such a liability it must affirmatively appear that she made the purchase on her individual credit. There must be either an express contract on her part to pay out of her separate estate, or the circumstances must be such as to show clearly that she assumed individual responsibility for payment, exclusive of the liability of the husband. For if the purchase be made under such circumstances as that an action could be maintained against the husband for the contract price, the debt so contracted becomes his debt, and the statute invalidates the contract of the wife for its payment.

In the present case, the proof was that the husband supported his family. The wife testifies that she purchased as the agent of the husband, and by his authority; that the payments on account were made with money furnished by the husband; that the pork credited on the account belonged to the husband; that the husband directed the plaintiffs to come to the house with the wagon. These facts were undisputed.

On the part of the plaintiffs, it appeared in evidence that the goods were charged to the wife on their books, but it did not appear that the wife directed them to be so charged, or knew that the account had been kept in that manner. The plaintiff's reason for making the charge to the wife arose from his custom of charging meat to the one who got it, whether man or woman; that he charged it to Mrs. Wilson because she got the meat of him.

The only special circumstance adduced to show that the debt was the debt of the wife, was a pass-book which was in

the defendant's custody, and which contained entries of the items of the account. The items were not preceded by any heading, but on the front cover of the book was written, "Mr. Jacob Wilson, in account with Frank O. Herbert." There was evidence that "Mr." was originally written "Mrs." Assuming that to be so, such an endorsement is ambiguous. It may show merely the state of the account which the wife was running up in making purchases for family use, and, when taken in connection with the other evidence, does not afford proof of an individual liability on the part of the wife of such clearness and distinctness as to supply the proof necessary to fix an individual liability on the wife.

The judgment should be reversed, with costs.