MANLY N. CUTTER, Appellant, v. CLARA MORRIS,.
Respondent.

Where services are rendered for the benefit of the separate estate of a
married woman, with her knowledge, the presumption is that they were
rendered at her request.

In an action against a married woman for services alleged to have been
rendered for her by plaintiff, as an architect in preparing plans and
superintending the erection of an addition to a dwelling-house owned by
her and occupied by herself and husband, plaintiff's evidence was to the
effect that in consequence of a conversation with defendant's husband he
called at her house and stated to her that her husband, who was present
at the interview, had told him she was about to erect an addition to her
house. She replied that this was so; she stated certain things she desired
included in the work, and thereupon a rough plan was drawn by plaintiff
and discussed, and finally approved by her; he was directed to make the
drawings and to render such assistance in the work as should be required
of him, and was advised that the husband would give his ideas as to the
details. This was not expressly contradicted, but circumstances were
proved tending to show that the employment was by the husband.
Plaintiff was nonsuited. *Held*, error; that the question was one of fact
for the jury.

*Cutter* v. *Morris* (41 Hun, 575), reversed.

(Argued June 28, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 15, 1886, which affirmed a judgment entered upon an order dismissing the complaint " on the merits " on a trial.

This action was brought by the plaintiff to recover the sum of $1,262.08, which he alleged was the reasonable value of his services as an architect, rendered for the defendant at her request in preparing plans, making estimates and superintending the erection of an addition to her house at Throgg's Neck, New York.

At the close of the evidence given in behalf of the plaintiff the trial court, on motion of the defendant, ordered that the complaint be dismissed upon the ground that there was no evidence to support the plaintiff's cause of action, and upon the further ground that it affirmatively appeared that the contract was not made with the defendant but with her husband.

The material portions of the evidence are stated in the opinion.

*John Henry Hull* for appellant. The nonsuit cannot be sustained. (*Cook* v. *N. Y. C. R. R. Co.*, 1 Abb. Ct. App. Dec. 433; 3 Keyes, 476; *Howell* v. *Gould*, 3 id. 422; *Ross* v. *Mayor, etc.*, 4 Robt. 49; *Monroe* v. *Reynolds*, 47 Barb. 574; 30 N. Y. 226; *Schwerin* v. *McKie*, 5 Robt. 404; *Colt* v. *S. A. R. R. Co.*, 49 N. Y. 671; *Justice* v. *Long*, 52 id. 323; *Sherwood* v. *M. M. Ins. Co.*, 5 Hun, 115.) It is apparent that defendant knew of plaintiff's services, that they were rendered by her authority and assent, and were for the benefit of her separate estate. (*Fowler* v. *Seaman*, 40 N. Y. 592; *Foster* v. *Persch*, 68 id. 400; *Trimeyer* v. *Turnquist*, 85 id. 516; *Meeker* v. *Claghorn*, 44 id. 349.) Entries of charges in a book against an agent, instead of the principal, are not conclusive evidence that the credit was given to the agent. (*Foster* v. *Persch*, 68 N. Y. 402; *Meeker* v. *Claghorn*, 44 id. 352.)

*Alfred B. Cruikshank* for respondent. The court was right in dismissing the complaint. (*Wilds* v. *H. R. R. R.*

*Co.*, 24 N. Y. 430; *Deyo* v. *N. Y. C. R. R.*, 34 id. 9; *Neuendorf* v. *W. M. L. Ins. Co.*, 69 id. 389; *Comrs.* v. *Clark*, 94 U. S. 278; *Wansbough* v. *Cooper*, 2 Hun, 428.

VANN, J. According to the pleadings the burden of proof was on the plaintiff to establish as a fact that he rendered the services in question upon the employment or at the request of the defendant. It was not disputed that the plaintiff rendered services of the nature described in the complaint for some one; that they were rendered in erecting an addition to a dwelling-house owned and occupied by the defendant; that she knew that this improvement was to be made upon her property through the agency of the plaintiff, and that subsequently she knew that the work was in progress under his supervision. It was insisted, however, in her behalf, that she did not employ the plaintiff, but that his contract was with her husband John A. Morris.

The principal witness was the plaintiff himself, who testified, in substance, that on the 5th day of November, 1882, said John A. Morris came to his office in New York and had a conversation with him; that, as a consequence of what was said on that occasion, he went to the house of the defendant and, in the presence of her husband, said to her: "Mr. Morris tells me that you are about to erect an addition to your house and that it was decided to have Mr. Doty do the work." She said that that was so, and then followed some discussion between the three in regard to the size of the building and the proportions of the rooms. The defendant procured a piece of paper at the request of the plaintiff, who thereupon drew a rough plan which she assisted him in developing. She said that she wanted a large mantel so that she could have an open wood fire, and that she did not want the bay window to have the same finish as the bay window in the main building because of certain projections in the room. The plaintiff proposed that the shape of the window be cylindrical, and she said that she thought that would be satisfactory. The sketch was explained to her, and she said she thought it

would be a beautiful addition. At the same time a plan of the principal room was drawn, which she examined and approved. After various details had been talked over she said that she wished this to be made the most beautiful room in the house; that Mr. Morris was to occupy it, and that if he did not like it when it was finished she would take it herself. She wished Mr. Doty, who was a carpenter and general mechanic employed about the place, to have control of all the work.

The plaintiff further testified as follows: " I asked Mrs. Morris, or said, that I wanted it pretty well understood if Mr. Doty was to do the work and to have entire control, that I wanted to understand very clearly what I was to do, how this matter could be arranged, and I think I suggested that as there probably would be a good many different kinds of work that Mr. Doty personally could not do, that he could get others to do it, and still retain control of all the people on the place, which was Mrs. Morris' desire; I said, that as there was probably many different kinds of work to be done in the erection of this addition that probably Mr. Doty could not do all of it personally, and that it would be necessary for him to get some assistance, which he could do and still retain control of the people on the place, Mrs. Morris said that that would be satisfactory; I asked Mrs. Morris whether I should come up there and she said no, only when asked to do so by Mr. Doty, and that I should give him such assistance as he called for; that I should go ahead and make the drawings from such directions as I had then received, and Mr. Morris would come down to the office and give his ideas in regard to the details and all arrangements." " Mrs. Morris stated that it would be necessary to have furniture, and I asked her whether she would buy it or have me make drawings for it, and she thought it would be better to have drawings made and have it ordered." "I stated to Mrs. Morris that I thought it would be necessary to have some fire irons and furnishings for her grate and asked her whether I should select them for her and she asked me to select them."

" I stated at that conversation that I thought it would look better and be desirable to have the end of that building of brick, and Mrs. Morris stated that she agreed with me, that it was better it should be made of some heavy material." " She said that her husband would come and see me at my office and direct me from time to time about the details of the matter."

Mr. Morris took no part in the conversation other than as already stated, except to ask plaintiff's opinion as to the height that a certain room should be, to approve certain suggestions and to say something about the gas fixtures and furniture, but what does not appear. Nothing was said "to the effect that this addition to the house was to be at the expense of Mr. Morris." This testimony, and more of like character,. was modified in no material respect upon the cross-examination, and it was not contradicted by anyone. Neither Mr. nor Mrs. Morris was sworn, although it is obvious that their testi- mony would have been important. But while the evidence of the plaintiff was not expressly contradicted, the defendant. claims that it appeared, from certain circumstances, that he was employed by Mr. Morris and not by the defendant. These circumstances, among others, are that Mr. Morris first saw the plaintiff upon the subject of the building; that he was to occupy the room; that he only discussed the cost with the plaintiff; that he gave instructions to and corresponded with plaintiff about the addition; that the plaintiff seemed to regard Mr. Morris as the principal in his letters and in asking for proposals; that Mr. Morris gave all the directions to third persons and paid the most but not all of the bills; that the plans were indorsed : "Plans for the addition to the house of John A. Morris," although this, it appears, was done by an assistant of the plaintiff, without his knowledge or authority. There were other circumstances tending, as was claimed, to contradict or to corroborate the theory of the plaintiff, but from what has already been stated the general nature of the evidence sufficiently appears.

As the services in question were rendered for the benefit of the separate estate of the defendant, and she knew it at the

time, the natural presumption is that they were rendered at her request. The conversation between the parties, which is claimed to be equivocal, should be interpreted in the light of this presumption. When, therefore, the plaintiff commenced a conversation with the defendant by saying: " Mr. Morris tells me that you are about to erect an addition to your house," there can be little doubt as to what she understood him to mean. Yet if he was mistaken in addressing her as the principal, she made no effort at any time to correct his impression. The conversation took place in the presence of Mr. Morris, but if he regarded the business as exclusively his own he said nothing upon the subject. At this interview the defendant made all the requests and gave all the directions, and the natural inference from all that was said and done is that she employed the plaintiff to work for her. If, however, there was any doubt as to the intention of the parties, how was that doubt to be set at rest? In a simple action at law was it not for the jury to settle it?

Since this evidence was not expressly contradicted, the antagonistic circumstances relied upon to justify a nonsuit should have been so strong, clear and convincing as to make an overwhelming case for the defendant. Otherwise, would it not have been the duty of the trial court to ask the jury to compare the *prima facie* case, made by the story of the plaintiff, with the circumstances claimed to be inconsistent therewith, and, bearing in mind upon whom the burden of proof rested, to say upon all the evidence where the truth was. But are not the circumstances invoked by the defendant so equivocal as of themselves to present a question for the jury? For instance, the letters that passed between the plaintiff and Mr. Morris do not even indirectly state that the work was to be done for the defendant, but seem to assume that the husband was the principal. Still, in view of the instructions given by the defendant to the plaintiff that Mr. Morris would see him at his office and direct him about the details of the matter, was it not for the jury to decide how satisfactorily this agency of the husband explained acts and

words of the plaintiff, indicating upon their face that he was dealing with Mr. Morris only? So the agency of Doty, the carpenter, for some one was admitted, but whether he was the agent of Mr. or Mrs. Morris, was disputed, and there were circumstances claimed to support either theory.

We think that a question of fact was presented which should have been submitted to the jury. If the plaintiff's version of his conversation with the defendant is to be believed and interpreted according to his theory, it would authorize a verdict in his favor. Even if that conversation had been contradicted by several witnesses, it would have been for the jury to decide who told the truth. The contradictory circumstances which are claimed to discredit his evidence are no more conclusive, to say the most, than the testimony of several apparently truthful witnesses. The question of credibility, the sense in which the words were used, the inferences to be drawn from admitted facts, the weight and probative force of the evidence, belonged to the peculiar province of the jury. If, upon any reasonable view of the entire evidence, they could have found in favor of the plaintiff, it was the duty of the learned justice who presided at the trial to submit the case to them for decision.

We are of the opinion that there was enough evidence to support a verdict for the plaintiff, and that the action of the court in dismissing the complaint, without permitting the jury to pass upon the question of fact, was error that calls for a reversal of the judgment and a new trial.

All concur, except HAIGHT, J., dissenting.

Judgment reversed.